***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** ISSUES TO BE DETERMINED *Page 2 
1. Did Plaintiff unjustifiably refuse suitable employment pursuant to N.C. Gen. Stat. § 97-32?
2. Whether Plaintiff continues to be disabled pursuant to N.C. Gen. Stat. § 97-29?
3. To what amount of additional indemnity or medical compensation, if any, is Plaintiff entitled?
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, Plaintiff submitted the following:
 • A Job-Search Log, which was admitted into the record and marked as Plaintiff's Exhibit (1).
Also at the hearing before the Deputy Commissioner, Defendant submitted the following:
 • A Job Description for a Special Education Teacher's Assistant position, which was admitted into the record and marked as Defendant's Exhibit (1).
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, and in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties have been properly designated, and there is no question as to nonjoinder, or misjoinder of parties. *Page 3 
3. An employment relationship existed between Defendant-Employer and Plaintiff-Employee on March 13, 2008.
4. On March 13, 2008, Defendant-Employer was self-insured and the third-party administrator was Key Risk Management.
5. On March 13, 2008, Plaintiff sustained a compensable, work-related injury to his head and neck.
6. Plaintiff's average weekly wage is $350.00, which yields a compensation rate of $233.35.
7. Defendant filed an Industrial Commission Form 63 and an Industrial Commission Form 62, pursuant to which it has provided necessary medical treatment to date and is paying temporary total disability benefits.
8. At the hearing before the Deputy Commissioner, the parties submitted the following:
 • A Packet of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2).
9. Also made part of the record are the depositions of Dr. Michael Broom, and Ms. Milagros Romero, RN.
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the date of the hearing before the Deputy Commissioner, Plaintiff was 47 years of age with his date of birth being November 20, 1962. *Page 4 
2. Plaintiff grew up in Puerto Rico and completed high school there. In 1998, he earned a mechanical drafting degree from Wake Technical Community College; however, he has never held a mechanical drafting job. Plaintiff's employment history prior to working for Defendant includes delivering bottled water and soft drinks and working as a ramp agent for General Aviation Terminal, a contractor with Delta Airlines. In that capacity, Plaintiff loaded and unloaded luggage from airplanes. Each of the positions Plaintiff held prior to working for Defendant required him to lift more than 25 pounds.
3. Plaintiff began working as a Teacher Assistant in Defendant's English as Second Language program in 2006. Plaintiff was assigned to West Millbrook Middle School where he worked in a number of classrooms assisting students who did not speak English as their native language. Although the majority of Plaintiff's job required little lifting, he did at times move tables and desks and carry projectors and other supplies between classrooms and to the library. Additionally, Plaintiff knelt, bent, and stooped at students' desks while providing instruction and support. Dr. A. J. Mutillo, Principal at West Millbrook Middle School, testified that, while there are technically no lifting requirements associated with the English as Second Language Teacher Assistant position, it is possible that Teacher Assistants would perform the tasks Plaintiff described in order to make a classroom function.
4. On March 13, 2008, Plaintiff was called to the school gym to monitor a physical education class. While Plaintiff was speaking with one student, another student threw a basketball at Plaintiff, striking him in the back of the head and causing his neck to snap forward. When this occurred, Plaintiff experienced a cracking sensation in his neck, and the force of the blow caused Plaintiff to place his hand on the floor for balance. Plaintiff experienced dizziness *Page 5 
when he stood back up. Following the incident, Plaintiff went to the school's office to report the injury.
5. Plaintiff was referred to NextCare clinic where he complained of neck pain and vision problems. Plaintiff followed up with NextCare on March 18, March 28 and April 9, 2008 for symptoms related to his work injury.
6. On May 12, 2008, Plaintiff sought treatment from Dr. Kapil Rawal, a neurologist. Plaintiff reported that he experienced blurred vision and moderate to severe neck pain since his injury by accident. Dr. Rawal diagnosed closed head injury with mild concussion. On July 2, 2008, Dr. Rawal noted that Plaintiff was experiencing right-arm pain and numbness, as well as continued neck pain. Dr. Rawal ordered a cervical MRI and EMG and nerve conduction studies of Plaintiff's right upper extremities.
7. The EMG revealed moderate right radiculopathy at C6, and the cervical MRI revealed a possible fracture at C5, a possible cord contusion at C5-C6, and a moderate sized herniated disc at C6-C7 abutting the cord.
8. On July 18, 2008, Plaintiff began treating with Dr. Mark Mikles, an orthopaedic spine surgeon with Raleigh Orthopaedic Clinic. Dr. Mikles ordered an additional MRI and a CT scan and diagnosed Plaintiff with spondylosis at C5-C7, disc osteophyte complex with moderate central stenosis, and myelomalacia. Dr. Mikles advised Plaintiff that, due to the myelomalacia, he would have some residual numbness, tingling, or weakness in his arms, and he recommended that Plaintiff undergo a two-level discectomy and fusion at C5-C7 to prevent further progression of these symptoms and to stabilize Plaintiff's spine. *Page 6 
9. On August 11, 2008, Plaintiff returned to Dr. Rawal who advised him that, based upon the results of the diagnostic studies, Plaintiff needed a spinal fusion. This was consistent with the recommendation given by Dr. Mikles.
10. Following a delay due to unrelated illnesses, Plaintiff underwent the recommended cervical fusion surgery on July 29, 2009. The surgery was performed by Dr. Mikles, who treated Plaintiff post-operatively on two occasions.
11. On or about September 1, 2009, Plaintiff moved to Kissimmee, Florida to care for his wife and be with his family. Plaintiff's wife is disabled and wheelchair-bound and had moved to Florida approximately one year earlier for health reasons at the recommendation of her doctor. Plaintiff and his family intend to live in Florida on a long-term basis, and Plaintiff has no intention of moving back to North Carolina.
12. Plaintiff began treating with Dr. Michael Broom of Orlando, Florida on November 10, 2009. Dr. Broom was aware that Plaintiff had received treatment in North Carolina, and had undergone surgery in July 2009. At the time of his initial examination by Dr. Broom, Plaintiff continued to experience neck pain radiating into his arms. Dr. Broom noted that there was a clear correlation between Plaintiff's objective physical findings and his subjective reports of pain. For Plaintiff's ongoing symptoms, Dr. Broom provided conservative treatment with physical therapy and pain medication. Dr. Broom did not believe Plaintiff was a surgical candidate.
13. On January 25, 2010, Dr. Broom opined that Plaintiff had reached maximum medical improvement and assigned a 10% permanent partial disability rating to his back pursuant to American Medical Association guidelines. Additionally, Dr. Broom assigned *Page 7 
permanent work restrictions of no overhead work, no lifting more than 15 pounds frequently, no lifting more than 25 pounds occasionally, and no repetitive bending or twisting.
14. Subsequent to finding that Plaintiff had reached maximum medical improvement, Dr. Broom continued to treat him for chronic pain. As of the time of the hearing before the Deputy Commissioner, Plaintiff was taking Darvocet, a mild narcotic, and using Voltaren gel, a topical anti-inflammatory.
15. By correspondence to counsel for Plaintiff dated April 9, 2010, Defendant offered Plaintiff a position as a Special Education Teacher Assistant at West Millbrook Middle School. Plaintiff, who had been living in Florida for seven months at the time, declined the job offer.
16. Dr. Broom reviewed a job description developed by Defendant for a Teacher Assistant position in a regular classroom, and one for a Special Education Teacher Assistant. He opined that the physical requirements for a Teacher Assistant in a regular classroom were within Plaintiff's work restrictions. However, with respect to the Special Education Teacher Assistant position, Dr. Broom opined that Plaintiff might have some difficulty performing some of the tasks listed on the job description, including physically intervening with students involved in altercations, and he was concerned that dressing students, and assisting with positioning and mobility might exceed Plaintiff's 25 pound lifting limit. Dr. Broom subsequently expressed the opinion that, if he did not have to perform the more physically demanding tasks listed on the job description, Plaintiff would likely be able to perform the Special Education Teacher Assistant job.
17. Dr. Mutillo testified that his school had an open one-on-one Special Education Teacher Assistant position with a student in the 7th or 8th grade for the 2010 school year, and that this was the position offered to Plaintiff. Regarding the Special Education Teacher Assistant job *Page 8 
description, Dr. Mutillo opined that the duties associated with the position offered to Plaintiff were most analogous to the duties associated with the Teacher Assistant positions in the school's Trainable Mentally Handicapped, Multicapped, Autistic, Severe and Profound Program. Although the duties associated with this program include toileting, acting as a job coach for students, dressing and feeding students, assisting with positioning and mobility, and assisting with behavior modification and physical restraint, Dr. Mutillo testified that Plaintiff would not be required to perform any of those tasks, with the exception of behavioral modification, while working with the student in question. However, Dr. Mutillo noted that there was no guarantee that Plaintiff would be permitted to work with the same student on an ongoing basis. Therefore, it follows that Plaintiff might in the future be required to perform the more physically demanding tasks associated with the Special Education Teacher Assistant position.
18. Dr. Mutillo deferred to Defendant's Human Resources Department with respect to questions regarding whether it was appropriate for Plaintiff to be working in the school while taking prescription narcotic pain medications.
19. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that the Special Education Teacher Assistant position offered to Plaintiff by correspondence dated April 9, 2010 was not a suitable position given Plaintiff's permanent physical work restrictions. Despite Dr. Mutillo's assertion that Plaintiff would not have to perform a number of the more physically demanding tasks listed on the job description, the Full Commission finds that the job description provided by Defendant lists as duties associated with the Special Education Teacher Assistant position tasks which Dr. Broom indicated could be difficult for Plaintiff and could exceed his work restrictions. Furthermore, as Dr. Mutillo acknowledged, that there was no guarantee that Plaintiff could continue to work with the same *Page 9 
student if he continued to be employed by Defendant, with the result that Plaintiff could be assigned to a position in which he would be required to perform the more physically demanding tasks associated with the Special Education Teacher Assistant job. Accordingly, Plaintiff's refusal of the position was justified.
20. There is no evidence that Plaintiff moved to Florida to avoid returning to work in a suitable position with Defendant. Given that fact, and the timing of and reasons for Plaintiff's move to Florida, the Full Commission finds by the preponderance of the evidence in view of the entire record that Plaintiff's move to Florida was made for good faith reasons and not for the improper motive of avoiding a return to work with Defendant.
21. Since being released by Dr. Broom, Plaintiff has looked for suitable employment in his local labor market in Florida. As of the date of hearing before the Deputy Commissioner, Plaintiff had applied for 50 to 60 jobs, but had not been offered a position. Plaintiff testified that he was willing to cooperate with vocational rehabilitation if Defendant assigned a vocational counselor in Florida. Plaintiff's efforts to find suitable employment have been reasonable.
22. Based upon the preponderance of the evidence in view of the entire record, including the medical and vocational evidence, Plaintiff has shown that, although he is capable of some work within the permanent work restrictions assigned, his reasonable efforts to find suitable employment have been unsuccessful and that he remains totally disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 10 
1. On March 13, 2008, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant involving his head and neck. N.C. Gen. Stat. § 97-2(6).
2. Our courts have defined "suitable employment" as "employment in the local labor market or self-employment which is reasonably attainable and which offers an opportunity to restore the worker as soon as possible to as nearly as practicable to pre-injury wage, while giving due consideration to the worker's qualifications (age, education, work experience, physical and mental capacities), impairment, vocational interests, and aptitudes." Collins v.Speedway Motor Sports Corp.,165 N.C. App. 113, 122, 598 S.E.2d 185, 191-92 (2004).
3. The Special Education Teacher Assistant position offered to Plaintiff was not suitable given Plaintiff's permanent physical work restrictions. N.C. Gen. Stat. § 97-32; Peoples v. Cone MillsCorporation, 316 N.C. 426, 342 S.E.2d 798 (1986); Saums v.Raleigh Community Hosp., 346 N.C. 760, 487 S.E.2d 747 (1997). The job description provided by Defendant lists as duties associated with the Special Education Teacher Assistant position tasks which Dr. Broom felt could exceed Plaintiff's work restrictions. Although Dr. Mutillo testified that Plaintiff would not have to perform a number of the more physically demanding tasks listed on the job description while working with the student he was to be assigned to for the 2010 school year, Dr. Mutillo acknowledged that there was no guarantee that Plaintiff would continue to work with the same student in the future, and, therefore, Plaintiff could be assigned to a position in which he would be required to perform the more physically demanding tasks associated with the Special Education Teacher Assistant job, tasks which Dr. Broom was concerned could exceed Plaintiff's work restrictions. For the foregoing reasons, Plaintiff's refusal of the position offered did not constitute an unjustifiable refusal of suitable employment. The burden is on Defendant to show *Page 11 
that Plaintiff refused suitable employment. Gordon v. City ofDurham, 153 N.C. App. 782, 787, 571 S.E.2d 48, 51 (2002).
4. As noted above, the North Carolina Court of Appeals has included in its definition of suitable employment the requirement that the employment is, "in the local labor market." Collins v.Speedway Motor Sports Corp., supra. The Court of Appeals has not directly addressed the issue of what the operative labor market should be for a worker who moves from North Carolina to a distant state following his compensable injury and who subsequently rejects an offer to return to his former employment in North Carolina. Although it ultimately decided the case on other grounds, inShah v. Howard Johnson,140 N.C. App. 58, 68-69, 535 S.E.2d 577, 583-84 (2000), the Court of Appeals acknowledged the lack of precedent regarding this issue but stated, "[I]t seems obvious that suitable employment for a person would normally be located within a reasonable commuting distance of that person's home." Id. at 68. In support of its statement, the Court cited § 96-14(3) of the North Carolina Employment Security Act, which provides in part that, "[i]n determining whether or not any work is suitable for an individual, the Commission shall consider . . . the distance of the available work from his residence." Id. at 68-69, 535 S.E.2d at 584. See White v.Weyerhauser Co.,167 N.C. App. 658, 668, 606 S.E.2d 389, 397 (2005) (advising that, where appropriate, appellate courts should look to Employment Security Act for guidance on issues not yet addressed in workers' compensation context). (The Full Commission further notes that the statutory definition of suitable employment in Session Law2011-287, House Bill 709, N.C. Gen. Stat. 97-2(22), does not apply to this case).
6. While Defendant asserts that determining the suitability of employment based on an employee's residence following a move from North Carolina to a distant state could result in injured employees moving to distant states in an attempt to avoid a return to work with *Page 12 
defendant-employers or otherwise frustrate Defendants' attempts to return them to suitable employment, in the instant case, there is no evidence to show that Plaintiff moved to Florida for any reason other than the good faith reasons of wanting to care for his disabled wife and be with his family members from whom he had been separated for approximately one year. Also, Plaintiff's move occurred approximately seven months prior to the offer of employment. As such, Plaintiff's local labor market is the area within a reasonable commuting distance from his current residence.Shah v. Howard Johnson, supra.
7. Based upon the preponderance of the evidence in view of the entire record, the Full Commission concludes that Plaintiff has not unjustifiably refused any suitable employment offered to him that is readily available his local labor market. N.C. Gen. Stat. § 97-32.
8. Plaintiff has the burden of proving disability. Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001). In order to meet this burden of proof, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by his injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, *Page 13 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations.Demery v. Perdue Farms., Inc., supra.
9. In the present case, Plaintiff met his initial burden to show that he was disabled by proving that he is capable of some work, but after a reasonable effort on his part, he has been unsuccessful in his efforts to obtain suitable employment. Russell v. Lowe'sProduct Distribution, supra. Defendant has not shown that suitable jobs were available for Plaintiff in his local labor market and that Plaintiff was capable of obtaining a suitable job, taking into account Plaintiff's physical and vocational limitations.Demery v. Perdue Farms., Inc., supra.
10. As a result of his March 13, 2008 admittedly compensable injury by accident, Plaintiff continues to be entitled to be paid by Defendant ongoing total disability compensation at the rate of $233.35 per week until he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, supra.
11. As a result of his March 13, 2008 admittedly compensable injury by accident, Plaintiff is entitled to have Defendant pay for all related medical expenses incurred or to be incurred, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD *Page 14 
1. Defendant shall continue to pay to Plaintiff ongoing total disability compensation at the rate of $233.35 per week until he returns to work or until further Order of the Commission. This compensation is subject to the attorney's fee approved herein.
2. Defendant shall pay for all related medical expenses incurred to be incurred by Plaintiff as a result of his March 13, 2008 admittedly compensable injury by accident, when the medical bills have been approved according to established Industrial Commission procedures.
3. A reasonable attorney's fee of twenty-five percent (25%) is hereby approved for counsel for Plaintiff. This fee shall be paid by having counsel for Plaintiff receive every fourth compensation check due Plaintiff.
4. Defendant shall pay the costs.
This the ___ day of September, 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/________________ PAMELA T. YOUNG CHAIR
 S/________________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1